146 N.J. Super. 463 (1977)
370 A.2d 50
CARMELLA LAPIDULA, PLAINTIFF-RESPONDENT,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT-APPELLANT. JAMES L. MOORE, PLAINTIFF-RESPONDENT,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT-APPELLANT. HENRY L. FREEMAN, PLAINTIFF-RESPONDENT,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1977.
Decided January 25, 1977.
*465 Before Judges HALPERN, BOTTER and DAVIDSON.
Mr. C. Kennon Hendrix argued the cause for appellant (Mr. Roy D. Cummins, attorney).
Mr. Jan M. Schlesinger argued the cause for respondent Carmella Lapidula (Messrs. Hartman, Schlesinger, Schlosser & Faxon, attorneys).
Mr. Jeffrey Clark argued the cause for respondents James L. Moore and Henry L. Freeman (Mr. James Logan, Jr., attorney; Mr. Michael D. O'Brien on the brief).
The opinion of the court was delivered by HALPERN, P.J.A.D.
This is a consolidated appeal in which three plaintiffs, who were involved in separate automobile accidents in New Jersey, sued a common defendant, *466 Government Employees Insurance Company (Geico), to recover "no fault" benefits under insurance policies issued to them by Geico. Geico appeals from the summary judgments entered against it in favor of plaintiffs.
Plaintiff Carmella Lapidula was a dependent of her husband, a serviceman. Plaintiffs James L. Moore and Henry L. Freeman were also servicemen. All three plaintiffs, in accordance with applicable federal statutes,[1] received free medical care for their injuries at the Walston Army Hospital. Subsequently, plaintiffs settled their claims against their respective third-party wrongdoers. Under applicable federal statutes, the United States Government was subrogated to plaintiffs' rights against the third-party wrongdoers to the extent of the reasonable value of the care and treatment furnished to plaintiffs.[2] As a result, plaintiffs settled and paid the Government's claims in the following manner: the claim against Lapidula of $1,402 for $500; the claim against Freeman of $8,970 for $2,937, and the claim against Moore of $5,551 for $3,000.
The narrow legal issues presented are whether the care and treatment rendered by the government to a person in military service or a dependent results in a medical expense "incurred" under the "no fault" law, N.J.S.A. 39:6A-1 et seq., and whether the payment by plaintiffs to the Government out of the proceeds of the settlement creates an "incurred" medical expense. The statute provides in relevant part that every automobile liability insurance policy shall afford additional coverage to designated persons (plaintiffs are within the designated class), regardless of fault, and make "* * * Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. * * *"
*467 Under the existing facts, we interpret the statutory and insurance policy language to mean that plaintiffs did incur medical expenses, the reasonable value of which Geico must pay in full to plaintiffs. Geico's thesis that medical expenses were not incurred by plaintiffs because they were not obligated to pay for the services is unrealistic and lacks substance. The medical services rendered by the Government were not gratuitous but were part of the compensation paid military personnel and their dependents for the services rendered to the armed forces. See Smith v. United Services Automobile Ass'n, 52 Wis.2d 672, 190 N.W.2d 873 (Sup. Ct. 1971); Heis v. Allstate Ins. Co., 248 Or. 636, 436 P.2d 550 (Sup. Ct. 1968). In short, the medical expenses were "incurred" because plaintiffs were liable for such services even though someone else was responsible to pay for them. This approach is supported by the fact that the Government, by law, was subrogated to plaintiffs' right to recover such medical expenses from the third-party wrongdoers.
In addition, we perceive no sound reason, in law or equity, why Geico should benefit from the medical services rendered plaintiffs by the Government because plaintiffs had a vested right thereto by federal statute. This is just another way of applying the general rule that one obligated to pay because of a wrong done, or an obligation incurred by contract, may not benefit by payments or medical services rendered to the inured party from collateral sources. See Long v. Landy, 35 N.J. 44, 55-56 (1961); Dillione v. Deborah Hospital, 113 N.J. Super. 548 (App. Div. 1971); Sanner v. Government Employees Ins. Co., 143 N.J. Super. 462 (Law Div. 1976); Hollister v. Government Employees Ins. Co., 192 Neb. 687, 224 N.W.2d 164 (Sup. Ct. 1974); Smith v. United Services Automobile Ass'n, supra; American Indem. Co. v. Olesijuk, 353 S.W.2d 71 (Tex. Civ. App. 1961). To sustain Geico's contentions would result in an unwarrantable windfall to it and an inequitable result to plaintiffs, who paid premiums for the coverage they sought to obtain. United Services *468 Automobile Ass'n v. Holland, 283 So.2d 381 (Fla. D. Ct. App. 1973).
Affirmed.
NOTES
[1] 10 U.S.C.A. § 1074; 10 U.S.C.A. § 1076-1078.
[2] 42 U.S.C.A. § 2651.