183 N.J. Super. 531 (1982)
444 A.2d 630
JOHN QUINONES, AN INFANT, BY HIS GUARDIAN AD LITEM AND NATURAL MOTHER, BETTY CARHART, PLAINTIFFS,
v.
PASSAIC BOYS CLUB AND EUGENE CURHAM, JR., DEFENDANTS.
Superior Court of New Jersey, Law Division (Civil), Passaic County.
Decided January 29, 1982.
*533 William Sellinger for plaintiffs.
Albert C. Lisbona for defendants.
RUMANA, J.S.C.
Should prejudgment interest be available on plaintiffs' award for hospital and medical expenses when such expenses were paid by the county welfare board and the State Department of Human Services?
The within negligence action was tried to a jury which rendered a verdict in favor of plaintiffs and against defendants. The jury awarded the infant plaintiff $9,600 for his injuries and both the infant and his plaintiff mother $16,447 for hospital and medical expenses.
Plaintiffs' hospital and medical expenses had been paid by the Passaic County Welfare Board and by the New Jersey Department of Human Services, Division of Medical Assistance and Health Services. These agencies have a lien against both plaintiffs on the award received by plaintiffs by virtue of a reinbursement agreement entered into by the agencies and the infant plaintiff's mother.
It is the contention of plaintiffs that they are entitled to prejudgment interest at the rate of 12% on the entire award.
Defendants take the position that they should not have to pay prejudgment interest on the hospital and medical expense portion of plaintiffs' award on the grounds that plaintiffs have suffered no monetary loss for these expenses. Defendants maintain that prejudgment interest on the medical portion of plaintiffs' award originally paid by the public agencies would provide plaintiffs with a "windfall." Defendants further contend that the instant circumstances constitute an "exceptional case" that calls for the suspension of the running of prejudgment interest under R. 4:42-11(b). Defendants have supplied the court with an affidavit which indicates that the public agencies are not seeking any interest of the monies provided plaintiffs for hospital and medical expenses.
*534 R. 4:42-11(b) and the case law dealing with prejudgment interest compel the assessment of prejudgment interest on the entire verdict in favor of plaintiffs which includes hospital and medical expenses.
R. 4:42-11(b) reads as follows:
(b) Tort Actions. Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest at 12% per annum on the amount of the award from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest. The contingent fee of an attorney shall not be computed on the interest so included in the judgment.
Thus, the decision whether to suspend or impose prejudgment interest in this case is left to the sound discretion of the trial court. Kotzian v. Barr, 81 N.J. 360, 363 (1979). The court is to be guided by two policies which are the foundation for the above rule: "the indemnification of a plaintiff for the loss of income he presumably would have earned had payment not been delayed, and the encouragement of prompt consideration of settlement possibilities." Id.
Clearly, plaintiffs could not have earned money on that portion of the damages set aside for medical expenses, even if defendants had paid over such funds immediately. However, that would be the case any time medical expenses are part of a verdict in a tort action in which the plaintiffs did not personally pay such expenses when they became due. R. 4:42-11(b) as it stands in no way requires a court to suspend the running of prejudgment interest on a verdict which includes hospital and medical expenses, whether such expenses have been paid by a public assistance agency, an insurance carrier, an employer  or whether they have not been paid at all.
Furthermore, compensation for loss of income is only one policy behind the prejudgment interest rule. The encouragement of settlement policy has been strongly and eloquently espoused by our courts.
*535 Our Supreme Court in Busik v. Levine, 63 N.J. 351 (1973) stated with regard to prejudgment interest in tort cases:
So also, a refusal to allow interest in tort matters has been criticized. See Moore-McCormack Lines v. Amirault, 202 F.2d 893 (1 Cir.1953). It is questioned whether justice is hereby done as between parties to the suit. But beyond their interest, there is also a public stake in the controversy, for tort litigation is a major demand upon the judicial system. Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. See In re Insurance Rating Board, 55 N.J. 19 (1969). Hence prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities. In that meaningful way, prejudgment interest bears directly upon the judicial machinery and the problems of judicial management. It is this facet, added to the consideration of justice between the litigants, which warrants our holding that prejudgment interest be payable in these matters. [at 359-360]
It would severely undermine the above stated policy if medical expenses paid by outside sources such as Public Assistance or insurance carriers such as Blue Cross or Blue Shield were to be exempted from the application of the prejudgment interest rule.
In addition to the language of the court in Busik, supra, there is ample support for holding that plaintiffs are entitled to prejudgment interest on their entire verdict under the collateral source rule.
It is axiomatic that a party who becomes obligated to pay damages because of a wrong done may not benefit by payments or medical services rendered to the injured party from collateral sources. Lapidula v. Government Emp. Ins. Co., 146 N.J. Super. 463, 467 (App.Div. 1977).
Likewise, a tortfeasor obligated to pay damages in the form of prejudgment interest under R. 4:42-11(b) should not be permitted to take advantage of benefits his victim may have received from outside sources.
Finally, the instant circumstances do not constitute an "exceptional case" to warrant the suspension of prejudgment interest under R. 4:42-11(b).
*536 The sparse authority on this question clearly indicates that some fault on the part of plaintiff is necessary to create an "exceptional case," e.g., an inordinate trial delay caused by plaintiff's failure to submit to a required physical exam, Espin v. Allergan, 127 N.J. Super. 496 (Law Div. 1973), or a "questionable" and unreasonable settlement posture on the part of plaintiff, Kotzian, supra. The instant case is devoid of any evidence of fault on the part of plaintiff, and thus cannot be said to be "exceptional" under R. 4:42-11(b). Judge Pressler, in noting that the court's suspension authority should be "most cautiously exercised," has stated that "prejudgment interest is and should be allowed even when trial is delayed because of placement of the action on the military list or on the inactive list". Pressler, Current N.J.Court Rules, comment R. 4:42-11.
In light of all the above, the interests sought to be advanced by the prejudgment interest rule will best be served by allowing plaintiffs such interest on the entire verdict.